UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMINA KHALIFA,<br><br>Petitioner(s),<br><br>v.<br><br>JULIO HERNANDEZ, et al.,<br><br>Respondent(s). | CASE NO. C26-3260-KKE<br><br>ORDER GRANTING HABEAS PETITION |

Petitioner has been detained at the Northwest Immigration and Customs Enforcement ("ICE") Processing Center ("NWIPC") since August 10, 2026, and an immigration judge ("IJ") denied bond because he found that Petitioner was a flight risk. Because no reasonable person could reach that conclusion on this record, the Court finds that the IJ abused his discretion. The Court will therefore grant the petition for writ of habeas corpus and order the Government[1] to release Petitioner from custody.

## I. BACKGROUND

Petitioner is a national and citizen of Morocco. Dkt. No. 8 ¶ 4. In September 2023, Petitioner entered the United States as a nonimmigrant student on an F-1 visa set to expire on May 23, 2028. *Id.* ¶ 5. Petitioner filed an asylum application in May 2024, and this application remains pending. Dkt. No. 7-2 at 4. In September 2024, Petitioner's visa was terminated due to her

[1] This order refers to all Respondents except Bruce Scott collectively as "the Government."

authorized early withdrawal from her program. *Id*. Petitioner's application for work authorization was nonetheless approved in December 2024 and is valid through December 22, 2029. *Id*. Petitioner did not depart from the United States after her visa was terminated, but instead maintained employment and participated in her community. *See*, *e.g.*, Dkt. No. 1 at 15–16, 45–54.

On August 10, 2026, as Petitioner returned home from travel to Puerto Rico, ICE officers arrested her at the airport on an administrative warrant. Dkt. No. 7-3. On that same day, the Government issued a notice to appear, charging Petitioner with removability under 8 U.S.C. § 1227(a)(1)(C)(i). Dkt. No. 7-4. Petitioner was transported to the NWIPC, where she remains detained. Dkt. No. 8 ¶ 10. Petitioner requested a bond hearing, which was held on September 9, 2026. Dkt. No. 7-5. The IJ denied bond, finding that Petitioner is a flight risk. *Id*. Petitioner has not appealed this decision to the Board of Immigration Appeals. Dkt. No. 8 ¶ 12

Petitioner filed a habeas petition on September 11, 2026, arguing that the IJ abused his discretion in denying bond and requesting release as a remedy. Dkt. No. 1. For the following reasons, the Court agrees that Petitioner's continued detention is unlawful and that she must be released.

## II. ANALYSIS

To succeed on a habeas petition, a petitioner must show he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and … the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

A district court reviews an IJ's bond determination as to dangerousness and flight risk for abuse of discretion.[2] *See Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024). When reviewing for abuse of discretion, the district court does not reweigh the evidence, but rather determines whether the IJ applied the correct legal standard. *See id.* at 785.

In making bond determinations, IJs consider the "*Guerra* factors":

> (1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen's] length of residence in the United States; (3) the [noncitizen's] family ties in the United States, and whether they may entitle the [noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen's] employment history; (5) the [noncitizen's] record of appearance in court; (6) the [noncitizen's] criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen's] history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution or otherwise escape from authorities; and (9) the [noncitizen's] manner of entry to the United States.

*In Re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006).

As support for his flight-risk finding, the IJ cited the length of time Petitioner resided in the United States (approximately three years) and the fact that Petitioner did not apply for asylum immediately upon her entry into the country. Dkt. No. 1-10. Petitioner explained via counsel at the hearing that she did not immediately apply for asylum because at the time that she entered the country on a student visa, she did not fear returning to Morocco, but due to changing conditions in Morocco, that fear developed and increased months later. *Id.*

Whether Petitioner immediately applied for asylum upon entry to the United States is not relevant to the *Guerra* factors, and the IJ did not explain how this fact is relevant to risk of flight.

---

[2] Although the Government argues that the Court should require Petitioner to exhaust administrative remedies before considering the habeas petition on its merits (Dkt. No. 6 at 4–6), the Court waives prudential exhaustion in light of the irreparable injury that might result from the continued unlawful detention the petition alleges. *See Laing v. Ashcroft*, 370 F.3d 994, 998 (9th Cir. 2004); *see also Garcia Ortiz v. Henkey*, No. 1:26-cv-00043-BLW, 2026 WL 948275, at *3 (D. Idaho Apr. 7, 2026) (waiving administrative exhaustion requirements because "given the broader irregularities in bond hearings across the country … administrative remedies in the immigration system appear no longer efficacious").

Petitioner entered the country lawfully on a student visa (which is relevant to one of the *Guerra* factors), and the fact that she overstayed her visa (although not explicitly cited by the IJ as a flight-risk factor) is not, in any event, on its own "sufficient to establish flight risk[.]" *Shirley v. Scott*, 2:26-cv-02980-BAT, 2026 WL 2833676, at *5 (W.D. Wash. Sep. 22, 2026) (reasoning that if it was sufficient, then no immigrant detained for a violation could be entitled to bond and bond hearings would serve no purpose). Although the Government argues that an IJ may reasonably consider "the chronology of admission, filing, and non-departure when assessing flight risk under *Guerra*[,]" the IJ did rely on Petitioner's non-departure, nor does the Government explain how Petitioner's chronology infers flight risk.[3] Moreover, any governmental concern about Petitioner's failure to depart in September 2024 when her visa was terminated is undermined by the approval of Petitioner's work authorization application in December 2024 for a period of five years.

That Petitioner has resided in the United States for "only" three years does not solely support a flight-risk finding, particularly when Petitioner presented significant evidence in rebuttal, namely her fixed address with a lawful permanent resident sponsor, her employment history, her lack of criminal history, and her compliance with the requirements of her asylum application. *See, e.g.*, *Abdelmasseh v. Scott*, C26-1681-KKE, 2026 WL 1815279, at *4 (W.D. Wash. June 24, 2026) (finding that an IJ's failure to explain why a petitioner's 1.5 years of residence in the United States rendered him a flight risk undermined a flight-risk finding). No reasonable fact-finder could have considered this record and found Petitioner to be a flight risk. Accordingly, the Court finds that the IJ abused his discretion in denying bond and Petitioner's continued detention is unlawful.

---

[3] The Government also argues that the IJ "may consider the incentive to appear if relief is later denied[,]" but it is not clear how that argument relates to the IJ's findings here. Dkt. No. 6 at 9. The IJ did not discuss the likelihood that Petitioner's asylum application would be denied and instead emphasized that the merits of the asylum application were not before him. Dkt. No. 1-10.

Petitioner's continued detention would serve no immigration purpose, and the Court will exercise its discretion to order Petitioner's release. *See, e.g.*, *Escalante Perez v. Hernandez*, No. C26-0956 TSZ, 2026 WL 1004559, at *2 (W.D. Wash. Apr. 14, 2026).

## III. CONCLUSION

For these reasons, the Court GRANTS the habeas petition. Dkt. No. 1. The Government is ORDERED to release Petitioner no later than October 3, 2026, on reasonable conditions of supervision. The Government shall file a status report no later than October 6, 2026, confirming release in compliance with this order.

Dated this 2nd day of October, 2026.

Kymberly K. Evanson
United States District Judge